1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   RONALD W. DAVIS,                        No.  2:14-cv-1802-EFB

11                Plaintiff,

12        v.                                 ORDER

13   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security
14
                 Defendant.
15

16

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying his applications for a period of disability and Disability Insurance

19   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

20   Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the

21   reasons discussed below, plaintiff's motion is denied and the Commissioner's motion is granted.

22   I.      BACKGROUND

23        Plaintiff filed applications for a period of disability, DIB and SSI, alleging that he had

24   been disabled since September 22, 2010.  Administrative Record ("AR") 119-135.  Plaintiff's

25   applications were denied initially and upon reconsideration.  Id. at 65-69, 74-80.  On December 6,

26   2012, a hearing was held before administrative law judge ("ALJ") Danny Pittman.  Id. at 30-60.

27   Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE")

28   testified.  Id.

                                                   1

On January 11, 2013, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Act.[1]  *Id*. at 16-24.  The ALJ made the following specific findings:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2.  The claimant has not engaged in substantial gainful activity since September 22, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease; status post open reduction and internal fixation ankle (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

    * * *

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to occasionally lift and carry 20 pounds and frequently lift 10 pounds, stand and/or walk for 6 hours and sit for 6 hours in an 8 hour day with normal breaks, occasionally stoop, and frequently climb (20 CFR 404.1567(b) and 416.967(b)).

    * * *

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    * * *

7.  The claimant was born on August 10, 1963 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    * * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 22, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 18-24.

Plaintiff's request for Appeals Council review was denied on April 16, 2014, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 7-10.

/////

/////

3

1    II.    LEGAL STANDARDS

2         The Commissioner's decision that a claimant is not disabled will be upheld if the findings

3    of fact are supported by substantial evidence in the record and the proper legal standards were

4    applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

5    *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

6    180 F.3d 1094, 1097 (9th Cir. 1999).

7         The findings of the Commissioner as to any fact, if supported by substantial evidence, are

8    conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

9    more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

10   Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a

11   conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.

12   N.L.R.B.*, 305 U.S. 197, 229 (1938)).

13        "The ALJ is responsible for determining credibility, resolving conflicts in medical

14   testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

15   2001) (citations omitted). "Where the evidence is susceptible to more than one rational

16   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

17   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

18   III.   ANALYSIS

19         Plaintiff argues that the ALJ erred in discrediting his testimony without providing legally

20   sufficient reasons. ECF No. 14 at 6-14.

21         In evaluating whether subjective complaints are credible, the ALJ should first consider

22   objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341,

23   344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may

24   then consider the nature of the symptoms alleged, including aggravating factors, medication,

25   treatment and functional restrictions. *See id.* at 345-347. The ALJ also may consider: (1) the

26   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

27   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

28   prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater,* 80 F.3d

4

1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature,

severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

in determining whether the alleged associated pain is not a significant nonexertional impairment.

*See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir.

1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6

(9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

*Morgan*, 169 F.3d at 599.

Plaintiff testified that he is in constant pain and that he can no longer work due to back

and neck pain.  AR at 40, 44.  He claimed he cannot help his wife care for their two young

children, stating he is unable to assist with any of the household chores and that he is unable to

lift his son when he cries.  *Id*. at 40, 44, 49-51.  Plaintiff stated he cannot reach overhead or bend

over.  *Id*. at 47.  He testified it is difficult for him to sit or stand for more than 10-15 minutes at a

time or walk more than "a block."  *Id*.  at 46-47.

Plaintiff claimed he sees his chiropractor twice a week but that he has no permanent

restrictions from any doctor.  *Id*. at 41.  He testified he was taking two prescription medications,

including a muscle relaxer, but that while the medications helped with the pain they caused some

negative side effects.  *Id*. at 42.  He also stated he wears a back brace that was prescribed by Dr.

Ybarra for two hours a day and that he wears ankle braces on both ankles.  *Id*. at 43.  He claimed

he experienced sharp pain that radiates down both his legs and causes his hands to go numb.  *Id*.

at 45.  He further stated he and Dr. Ybarra discussed the possibility of nerve conductor studies,

but no study was ever done.  *Id*. at 54.  He also contended that Dr. Dureza had recommended

surgery, but that he had declined this treatment.  *Id*. at 41.

Contrary to plaintiff's contention, the ALJ provided several reasons for finding that

plaintiff's allegations as to his limitations was not fully credible.  First, the ALJ observed that

5

1    plaintiff made many statements at his hearing that were inconsistent with the medical record.  *Id*.

2    He testified on December 6, 2012 that he was receiving chiropractic care twice a week, (*id*. at 41)

3    but the medical record shows he was discharged in September of 2011 (*id*. at 286-287).  He also

4    claimed Dr. Dureza recommended back surgery.  *Id*. at 41.  However, Dr. Durezas's notes show

5    no indication that surgery was ever recommended, and instead reflect that only "physiotherapy

6    conservative care" was recommended.  *Id*. at 238.  He testified his medication caused blurry

7    vision and required him to sit down for five to ten minutes.  *Id*. at 42.  Again, the medical record

8    does not mention any negative side effects due to medication.  *See generally id*. at 192-298.

9    Plaintiff also stated that Dr. Ybarra provided him with a back brace (*id*. at 43), but this claim is

10   also unsupported by the medical record (*id*. at 214-215, 286-298).  He testified that he needed to

11   wear ankle braces due to pain (*id*. at 45-6), but there is no record of any physician prescribing or

12   recommending that he wear braces.  He also claimed that Dr. Ybarra discussed having nerve

13   studies conducted because his hands go numb causing him to drops things.  *Id*. at 52.  However,

14   Dr. Ybarra's treatment notes make no mention of a nerve study.  *Id*. at 214-215, 286-298.

15        Given the sheer number of plaintiff's unsupported claims concerning the treatment he

16   purportedly received, the ALJ permissibly concluded that plaintiff was exaggerating the severity

17   of his limitations.  *See Smolen v. Chater*, 80 F.3d 1996, 1284 (9th Cir. 1996) (in assessing a

18   claimant's credibility, an ALJ may utilize "ordinary techniques of credibility evaluation, such as

19   the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

20   other testimony by the claimant that appears less than candid . . . .").

21        The ALJ also discounted plaintiff's testimony that his impairments rendered him fully

22   disabled because the testimony is unsupported by the medical evidence.  AR at 21-22.  Examining

23   physician Dr. Rios found that plaintiff had a slight limp, negative straight leg raise test, a normal

24   range of motion at the cervical and lumbar spine, a reduced range of motion in right ankle, no

25   back spasms, no nerve root irritation, and normal motor strength.  *Id*. at 258.  Dr. Rios concluded

26   plaintiff could stand or walk for six hours and had no limits on how long he could sit.  *Id*. at 259.

27   Emergency room records from December 2010 reflect that plaintiff's neck, back, and all four

28   extremities were non-tender to palpations, he had a full range of motion, and steady gait.  *Id*. at

195.  In April 2011, after being involved in a car accident, plaintiff again received treatment at an emergency room.  Records indicate that plaintiff had a steady gait and only diagnosed with a back strain.  *Id.* at 203-205.  Treatment records from Dr. Dureza reflect that plaintiff had a normal gait, no acute distress, and a restricted range of motion in his cervical and lumbar spine.  *Id.* at 235-238.  In June 2011 treating physician Dr. Soori noted mild tenderness to palpations over lumbar spine, decreased range of motion of thoracolumbar spine and a negative straight leg raise test.  *Id.* at 218-219.  Plaintiff's diagnosis was a backache.  Further, plaintiff's x-rays are normal and his MRI's showed only mild bulging.  *Id.* at 205, 219.  Although the ALJ may not rely on an inconsistency with medical evidence as the sole basis for his credibility determination, it is a factor that may be considered.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Accordingly, the ALJ permissibly relied on plaintiff's physicians' findings and the limited objective evidence in giving little weight to plaintiff's testimony.

Lastly the ALJ noted that plaintiff was only prescribed conservative care.  AR at 22.  Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment."  *Parra v. Astrue,* 481 F.3d 742, 751 (9th Cir. 2007).  Despite testifying that Dr. Dureza recommended surgery (*id.* at 41), the record reflects that he only received conservative treatment.  As noted above, Dr. Dureza only "recommend[ed] physiotherapy conservative care."  (*Id.* at 238).  Moreover, Dr. Ybarra's treatment notes reflect that plaintiff responded well to conservative treatment.  *Id.* at 286.  Thus, the evidence supports the ALJ's finding that plaintiff was only prescribed conservative care.

Accordingly, the court finds that the ALJ gave several clear and convincing reasons for rejecting plaintiff's testimony concerning the extent of his limitations.

IV.  <u>CONCLUSION</u>

Accordingly, it is hereby ORDERED that:

1.  Plaintiff's motion for summary judgment is denied;

2.  The Commissioner's cross-motion for summary judgment is granted; and

/////

/////

3. The clerk is directed to enter judgment in the Commissioner's favor.

DATED:  March 16, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE